UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :
                                     :        00 Cr. 761-2 (JSR)
          -v-                        :
                                     :        OPINION AND ORDER
                                     :
DIEGO RODRIGUEZ,                     :
                                     :
                                     :
     Defendant.                      :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     More than two decades ago, defendant Diego Rodriguez

participated in a brutal murder of a government informant. Now,

after 20 years' imprisonment, he moves for so-called

compassionate release under 18 U.S.C. § 3582(c)(1)(A). He

supports this motion with, among other things, letters from no

fewer than 27 prison officials, attesting to his extraordinary

rehabilitation and, in many cases, expressly supporting his

release. The Government, however, opposes Rodriguez's motion.

Balancing Rodriguez's substantial showing of grounds for

compassionate release against the horrific nature of his

underlying crime, the Court concludes that Rodriguez's sentence

should be reduced to 30 years' imprisonment, to be followed by a

lifetime of supervised release.

     Until five days ago, it was not wholly clear that the Court

had authority to impose such a compromise, as some courts had

read the compassionate release statute as authorizing either
immediate release or no release, but nothing in between.
However, this past Friday, the Second Circuit Court of Appeals
recognized that the statute provided such flexibility, see
United States v. Brooker, --- F.3d ---, 2020 WL 5739712, at *8
(2d Cir. Sept. 25, 2020), thus allowing a balanced result in
this case.

I.    Background

   Familiarity with the general background to this case is here
assumed. See United States v. Quinones, 511 F.3d 289, 292-96 (2d
Cir. 2007). As relevant here, in the 1990s, Rodriguez, along
with his co-defendant at trial, Alan Quinones, ran a
racketeering enterprise focused on the distribution of cocaine
and heroin in the Bronx and elsewhere. Id. at 292. Quinones was
the head of the enterprise; Rodriguez served as his chief
lieutenant. Id. Following Quinones's March 1999 arrest for
selling heroin to an undercover police officer, Rodriguez, along
with Quinones, retaliated against Eddie Santiago, a confidential
informant whom they blamed for Quinones's arrest, by murdering
him. Id. The murder, at Quinones' orders, was preceded by brutal
torture, and Rodriguez was a willing accomplice throughout. Id.

   On July 27, 2004, Rodriguez and Quinones were convicted
following a seven-week trial before this Court and a jury on
substantive and conspiratorial counts of racketeering (18 U.S.C.

§ 1862(c), (d)), substantive and conspiratorial counts of drug trafficking (21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846), and the murder of the confidential informant in connection with the drug trafficking (21 U.S.C. § 848(e)(1)(A)). Id. at 291. Because the guilty verdict relating to Santiago's murder exposed Rodriguez and Quinones to the death penalty, the trial included a penalty phase, during which Rodriguez, in accordance with the then-mandatory Sentencing Guidelines, expressly requested that Court instruct the jury that the only two possible punishments for his crime were the death penalty or life imprisonment without the possibility of parole. Id. at 319. The jury unanimously voted to impose a sentence of life imprisonment, rather than the death penalty. Id. at 291. That sentence was upheld on appeal. Id. at 324.[1]

On June 17, 2020, Rodriguez, now 54 years old, submitted a 19-page hand-written memorandum of law, seeking compassionate release in light of his health problems and the COVID-19 pandemic. Dkt. No. 369. On June 19, 2020, the Court appointed

---

[1]   The Second Circuit declined to rehear the case en banc, see Rodriguez v. United States, No. 00-cr-761 (JSR), 2012 WL 1059355, at *3 (S.D.N.Y. Mar. 29, 2012), and the Supreme Court denied the defendant's petition for a writ of certiorari, Quinones v. United States, 555 U.S. 910 (2008). Rodriguez subsequently filed motions pursuant to 28 U.S.C. § 2255 to vacate or modify his sentence and pursuant to 18 U.S.C § 3582(c)(2) for a sentence reduction – both of which were denied. Dkt. Nos. 321, 346, 348.

Nathanial Marmur, Esq., to assist Rodriguez with any supplemental briefing. Dkt. No. 370. On July 31, 2020, Rodriguez, though counsel, filed a formal motion, Dkt. No. 371, that included, among much else, the 27 letters from prison officials referenced above. After the Government filed its opposition papers, the Court conducted oral argument on September 2, 2020.

II.  Legal Analysis

Rodriguez seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Under this Section, once a defendant has exhausted his administrative remedies,[2] a district court may reduce a defendant's sentence when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable," and (3) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Id. Although often referred to as "compassionate release," it is now clear, as noted above, that

---

[2]    While this Court has held that the exhaustion requirement is waivable in compassionate release cases related to the COVID-19 pandemic, see United States v. Haney, --- F. Supp. 3d ---, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020), the Government concedes that Rodriguez has adequately exhausted his administrative remedies in this case, see Letter from the Government to the Court dated Aug. 14, 2020 ("Gov. Mem."), Dkt. No. 373, at 5.

the statute allows for any sentence reduction – up to and
including but not limited to time served – so long as that that
reduction is warranted by extraordinary and compelling reasons,
consistent with the applicable policy statement, and appropriate
in light of the Section 3553(a) factors.[3] Indeed, as the Second
Circuit's very recent decision explained, "[a] district court
could . . . reduce but not eliminate a defendant's prison
sentence, or end the term of imprisonment but impose a
significant term of probation or supervised release in its
place." Brooker, 2020 WL 5739712, at *8.[4]

   A. Extraordinary and Compelling Reasons

---

[3]   As Judge Stein recently observed, the applicable policy
statement "essentially restates the requirements of the
compassionate-release statute, adding only that a sentence
reduction is warranted only if '[t]he defendant is not a danger
to the safety of any other person or to the community.'" United
States v. Torres, --- F. Supp. 3d ---, 2020 WL 2815003, at *8
(S.D.N.Y. Jun. 1, 2020). For the reasons discussed below, the
Court finds that Rodriguez is not a danger to any person or
community.

[4]   Rodriguez's motion, as initially filed pro se, asked for
his immediate release (i.e., a reduction to time served) and
made no mention of any other possible sentence reduction. But
during oral argument on the motion, defense counsel suggested
that the Court "has the discretion under the compassionate
release statute to reduce the sentence as well." Transcript of
Oral Argument dated Sept. 2, 2020 ("Tr."), 12:6-9. Because the
Government disagreed with that proposition, the Court ordered
supplemental briefing on the issue. See id. 12:16-13:3. Since,
however, the Second Circuit's recent opinion in Brooker
decisively resolves that question in Rodriguez's favor, the
Court need not linger further on it.

Congress has never defined what exactly constitutes
"extraordinary and compelling" reasons. Instead, Congress
directed the Sentencing Commission to promulgate "the criteria
to be applied and a list of specific" examples. 28 U.S.C. §
994(t). The Sentencing Commission, in turn, initially provided
three specific examples of "extraordinary and compelling
reasons": where (1) a defendant has a terminal or serious
medical condition; (2) a defendant with deteriorating health is
at least 65 years old and has served ten years or 75% of his
sentence; (3) certain family circumstances arise in which a
defendant must serve as a caregiver for minor children or a
partner. See U.S.S.G. § 1B1.13, Application Note 1.

In addition, however, the Sentencing Commission created a
fourth, "catch-all" provision: (4) that "[a]s determined by the
Director of the Bureau of Prisons," other circumstances create
"extraordinary and compelling reasons" for a sentence reduction.
See id. The language of the catch-all seems to require that the
Bureau of Prisons determine in the first instance whether some
unenumerated circumstance qualifies as an extraordinary and
compelling reason for a sentence reduction. But, as the Second
Circuit recently recognized, this policy statement predates the
passage of the First Step Act, Pub. L. No. 115-391, 132 Stat.
5194 (2018), which modified the compassionate release provision
by "free[ing] district courts to exercise their discretion in

determining what are extraordinary circumstances." <u>Brooker</u>, 2020 WL 5739712, at *5.

Exercising that discretion, the Court finds that Rodriguez has established extraordinary and compelling reasons for a sentence reduction. That finding is based on three factors.

First, Rodriguez's underlying health conditions put him at a high risk of severe illness from COVID-19. Since the onset of the coronavirus pandemic, courts have consistently held that the presence of underlying health conditions that increase the risks associated with COVID-19 can constitute extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). <u>See</u>, <u>e.g.</u>, <u>United States v. Scparta</u>, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020). Rodriguez suffers from a number of documented health conditions that constitute extraordinary and compelling reasons for a sentence reduction. Specifically, Rodriguez is clinically obese and was recently diagnosed with Type II diabetes mellitus. <u>See</u> Supplemental Memorandum of Law in Support of Diego Rodriguez's Motion for Compassionate Release ("Def. Mem."), Dkt. No. 372, at 6. As the Government itself concedes, these conditions "satistf[y] the 'extraordinary and compelling reason' threshold." Gov. Mem. at 5.[5] Other courts have made similar

---

[5]    Rodriguez also contends that his asthma, his age, and the fact that he has had one kidney surgically removed also put him

findings. See, e.g., United States v. Anderson, No. 16-cr-824
(JMF), 2020 WL 2849483, at *2 (S.D.N.Y. Jun. 2, 2020) (finding
that an obese defendant demonstrated extraordinary and
compelling reasons); United States v. Daugerdas, --- F. Supp. 3d
---, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020) (citing
defendant's Type II diabetes in finding extraordinary and
compelling reasons). Accordingly, the Court finds that
Rodriguez's obesity and Type II diabetes constitute an
extraordinary and compelling reason to modify his sentence.

It might seem, however, that this first factor, while it
might support a claim for immediate release, would diminish in
importance once the pandemic was over. But this is not entirely
so. For – and this is the second factor – the pandemic, aside
from posing a threat to Rodriguez's health, has made Rodriguez's
incarceration harsher and more punitive than would otherwise
have been the case. This is because the federal prisons, as
"prime candidates" for the spread of the virus, see United

--------------------

at high-risk and therefore qualify as extraordinary and
compelling reasons. See Def. Mem. at 7-8. The Government,
however, responds that his asthma and lack of a kidney "are not
comorbidities recognized by the CDC as creating an increased
risk of severe illness from COVID-19, and thus do not support" a
finding of extraordinary and compelling reasons. Gov. Mem. at 5
n.2. Because the Government concedes, and the Court finds, that
Rodriguez's obesity and diabetes put him at risk, the Court need
not reach the question whether his other health conditions
create or can contribute to extraordinary and compelling
reasons.

States v. Al Kassar, --- F. Supp. 3d ---, 2020 WL 4813199, at *1
(S.D.N.Y. Aug. 19, 2020), have had to impose onerous lockdowns
and restrictions that have made the incarceration of prisoners
far harsher than normal. For someone with Rodriguez's health
profile, the risk of suffering severe health consequences if he
contracts COVID-19, coupled to the severe conditions imposed by
the concomitant lockdowns and restrictions that are necessary to
ensure Rodriguez's safety, means that "the actual severity of
[Rodriguez's] sentence as a result of the COVID-19 outbreak
exceeds what the Court anticipated at the time of sentencing."
United States v. Mel, No. TDC-18-0571, 2020 WL 2041674, at *3
(D. Md. Apr. 28, 2020). While insufficient on its own,[6] this
second factor also weighs in favor of a finding of extraordinary
and compelling reasons.

Third, and here highly relevant, the overwhelming evidence of
Rodriguez's total rehabilitation weighs strongly in favor of a
finding of extraordinary and compelling reasons. It is true that
the compassionate release statute provides that
"[r]ehabilitation of the defendant alone shall not be considered
an extraordinary and compelling reason." 28 U.S.C. § 994(t)
(emphasis added). But as the Second Circuit recognized in last
Friday's decision, while rehabilitation "alone" is insufficient,

---

[6]    See United States v. Pinto-Thomaz, --- F. Supp. 3d ---,
2020 WL 1845875, at *4 (S.D.N.Y. Apr. 13, 2020).

it can "interact with the present coronavirus pandemic" to
create an extraordinary and compelling reason for a sentence
reduction. Brooker, 2020 WL 5739712, at *9; see also United
States v. Millan, 91-CR-685 (LAP), 2020 WL 1674058, at *7
(S.D.N.Y. Apr. 6, 2020) ("[Congress'] "use of the modifier
'alone' evidences that [it] believed that rehabilitation is
relevant to the question of whether a sentence should be reduced
and that rehabilitation, when considered together with other
equitable factors, could constitute 'extraordinary and
compelling reasons' for a sentence reduction.").

   Here, the evidence of Rodriguez's rehabilitation is, in the
Court's view, nothing short of remarkable. An extraordinary
collection of letters – from fellow inmates, family, friends,
and, most important, 27 members of the prison staff – make clear
that Rodriguez has used his twenty years in prison not just to
better himself but also to better his community. In short, the
Court finds that Rodriguez is wholly rehabilitated.

   This Court, indeed, has never before received on behalf of an
incarcerated defendant such glowing letters written by prison
staff from the institutions where the defendant has been
incarcerated. Many of these 27 staff members expressly recommend
a sentence reduction and ask the Court to grant Rodriguez a
second chance. To quote two typical letters:

- "This is a recommendation for a sentence reduction for
  Rodriguez . . . . I have known Inmate Rodriguez since
  2015, while working as the Captain's Secretary at
  Allenwood FCI. Inmate Rodriguez has always taken pride
  in his work and handled himself in the most respectful
  manner. He communicates exceptionally well with both
  inmates and staff. He has gone out of his way to help
  staff on many occasions and shown a willingness to
  improve as a person. I recommend inmate Rodriguez is
  deserving of a second chance.

  If given a second chance, I believe inmate Rodriguez
  would lead a productive life and he would not waste the
  opportunity to reconnect with his family and become a
  productive member of society." Letter from J. Wright,
  Captain's Secretary FCI Allenwood, dated Jun. 25, 2020,
  Dkt. No. 372-4.

- "I believe that given a second chance in society, Mr.
  Rodriguez would be able to reunite with his family and
  become a productive member of society. He has already
  served 20 years in prison, he is older now and has
  proved he is ready for re-entry into his community."
  Letter from L. Cioffo, UNICOR Recycling Tech., dated May
  21, 2020 ("Cioffi Letter"), Dkt. No. 372-4.

The Court finds these letters – written by the unbiased people

who have spent more time with Rodriguez than anyone else – to be

powerful evidence of his rehabilitation.

Rodriguez's fellow inmates, too, have written in support.

These inmates tell the story of a man who pushes them to be

better, to be decent, and to be educated. Again, just to quote

the typical examples:

- "[Rodriguez] is a beacon of hope to the many younger
  inmates that he mentors, he pushes them to better
  themselves, and teaches optimism in the face of despair,
  that prison itself is a lesson and a true chance to
  rehabilitate oneself." Letter from Kifano Jordan dated
  Jun. 26, 2020, Dkt. No. 372-6.

- "[Rodriguez] helped me to learn how to read, comprehend what I was reading, understand what I was reading, it was like he knew how to put things so I would understand them. On August 17th 2015 I achieve my GED. This was the 1st on anything good I get out of being in jail." Letter from Lenny Cain dated May 27, 2020, Dkt. No. 372-6.

Rodriguez also participates in formal prison programming to help guide younger inmates, where, according to the prison staff, he is reported to "go out of his way to help staff and inmates alike." Letter from Z. Rauch, Senior Officer Specialist, FCI Allenwood, dated Dec. 8, 2019, Dkt. No. 372-4. Another staff member explains that Rodriguez "truly is a mentor to his peers and has used his knowledge and skills to help other inmates to begin looking toward programming." Letter from B. Oberdorf, Recreation Specialist, FCI Allenwood, dated Mar. 2, 2016.

Rodriguez has also compiled an outstanding employment record throughout his twenty years in prison. At USP Lewisburg, where Rodriguez was previously incarcerated, Rodriguez was assigned to be a washing machine operator, a "very demanding job," where his supervisor found him to be "an outstanding worker who is never late, well groomed, and takes real pride in his work." Letter from R. Rhoades, Laundry Operations Specialist, dated Apr. 4, 2012, Dkt. No. 372-4. There, Rodriguez also served on the Suicide Watch Companion Team, to which he was selected based on his "demonstration of maturity, responsibility and commitment to

the well-being of fellow inmates." Letter from L. Karpen dated May 8, 2013, Dkt. No. 372-4.

After his transfer to FCI Allenwood, where he is now incarcerated, Rodriguez has continued to receive stellar reviews for his work ethic and attitude. An associate warden wrote, for example, that Rodriguez "has developed a diverse work history" and "has excelled in many work areas." Letter from T. Outlaw dated Mar. 3, 2016, Dkt. No. 372-4. Most recently, Rodriguez has served as a "tool room clerk," a "very high profile job within [the] institution that requires the utmost responsibility and accountability of tools." Cioffi Letter.

Rodriguez has also compiled an outstanding record with prison programming, having completed several courses, earned his GED, and finished a 4,000-hour technology apprenticeship program. See Dkt. Nos. 372-3 & 372-9.

It is not surprising that, in light of this exemplary record, the Government does not "dispute that [Rodriguez] has been a successful prisoner." Tr. at 6:61-21. But that concession actually understates the full extent of Rodriguez's transformation. Indeed, "[b]y any measure, [his] good deeds exceed the bounds of what we consider rehabilitation." Torres, 2020 WL 2815003, at *10. He has not merely "become [a] fully functioning member[] of society," but he has "established a decades-long record of meaningful community service, a record

that would be notable even outside the federal prison system."
Id. The Court finds that this overwhelming evidence of, not just
rehabilitation, but transformation, weighs in favor of a finding
that extraordinary and compelling reasons exist to modify
Rodriguez's sentence. That Rodriguez has developed such an
outstanding record in prison "without any tangible incentive
other than self-improvement, given that his life sentence meant
that he could neither earn any 'good time' credit nor receive
any other sentence reduction benefit" weighs all the more
strongly still. Millan, 2020 WL 1674058, at *7.

B. Whether a Sentence Reduction is Warranted

Having found extraordinary and compelling reasons for a
sentence reduction, the Court must now determine whether, and if
so how much of, a sentence reduction is warranted by those
reasons and is appropriate based on the Section 3553(a) factors
and applicable policy statement.[7] As discussed above, Rodriguez
seeks his immediate release – that is, a sentence reduction to
time served. After considering the Section 3553(a) factors,
however, the Court finds that such an extreme reduction would
not reflect the seriousness of, or provide just punishment for,

---

[7]     As noted earlier, the policy statement adds only that the
defendant not be a danger to any person or community. As is
obvious from the foregoing discussion, and as further elaborated
below, the Court finds that Rodriguez no longer remotely poses a
danger to any person or community.

his egregious participation in a brutal murder of a government informant. Nevertheless, the Court concludes that a more modest reduction to a term of 30 years' imprisonment, to be followed by a lifetime of supervised release, is both warranted by the above-described extraordinary and compelling circumstances and appropriate in light of the Section 3553(a) factors.

These two requirements are often, but are not always, coextensive. For example, in a case where the only extraordinary and compelling reason is the defendant's risk of contracting COVID-19, his immediate release might be warranted by the threat of the pandemic, but a reduction to a term of years might not be. That is because, as the Government points out, reducing such a defendant's sentence to a term of years "creates the possibility that he would be released at a time when the pandemic (and thus the grounds for his release) may well have subsided." Letter from the Government to the Court dated Sept. 7, 2020 ("Gov. Supp.") at 3. The implicit legal principle here, which the Court adopts, is that a sentence reduction must be reasonably responsive to the extraordinary and compelling reasons that warrant it. Accordingly, while the Court now turns to determining whether a sentence reduction is appropriate in light of the Section 3553(a) factors, it then circles back to confirm that such a reduction is warranted by, and would be

reasonably responsive to, the above-described extraordinary and compelling reasons.

### i. What Sentence is Appropriate in Light of the Section 3553(a) Factors?

The Section 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the need for the sentence "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (2).

The Court first considers the "history and characteristics" of Rodriguez. In making this analysis, the Court is guided by the Supreme Court's observation that "evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" Pepper v. United States, 562 U.S. 476, 491 (2011). As detailed above, Rodriguez has undertaken extraordinary efforts at rehabilitation since his incarceration. His remarkable postsentencing record weighs strongly in favor of a sentence reduction.

Notwithstanding Rodriguez's rehabilitation, the Government
contends that "the need to protect the public from further
crimes" "counsel[s] against" a sentence reduction. The
Government gives two reasons why this is so. First, the
Government suggests that because Rodriguez "was arrested for his
conduct when he was 34 years old," his conduct was not the
result of "youthful misadventure." Gov. Mem. at 5-6. While the
Government does not spell this argument out, its implication is
clear: Rodriguez is likely to reoffend. But, as the defense
points out, "this argument is belied by Mr. Rodriguez's
outstanding long-term prison record, lack of any significant
disciplinary history, and the numerous letters of support
submitted by prison staff, family, and friends, all attesting to
Mr. Rodriguez's reformation." Letter from the Defense to the
Court dated Aug. 28, 2020 ("Def. Reply"), Dkt. No. 374, at 2.
Indeed, from old friends opening up their home[8] or offering him a
job,[9] to his family – including his three daughters – who are
eager for him to return, the Court finds an unusually supportive
network prepared to help Rodriguez effectively transition back

---

[8]    See Letter from Michael Tapscott, Sr., to the Court dated
Jul. 10, 2020, Dkt. No. 372-7.

[9]    See Letter from Yvonne Garcia to the Court, Dkt. No. 372-7
("I'm assuring that if [Rodriguez] is granted relief he will be
employed at my establishment. Mr. Rodriguez will start with a
base minimum salary of $15.00 an hour.").

into society. Thus, as the Court explained during oral argument, there "is very little evidence to suggest that [Rodriguez] would go out and commit new crimes." Tr. at 7:22-23. And if his sentence is reduced to 30 years, he will be more than 60 years of age upon his release, making the likelihood of re-offending even more remote.

Second, the Government argues that "the need to afford adequate specific deterrence weighs heavily against granting" a sentence reduction, because Rodriguez, in his pro se motion, supposedly underplayed the extent of his involvement in the murder. Gov. Mem. at 6. In support of this argument, the Government points to a passage in which Rodriguez quotes from an argument made by his previous lawyer in a letter to support a 2016 clemency petition in which letter his involvement in Santiago's murder was downplayed. See id.

But this is unpersuasive for several reasons. For one thing, as the Court explained during oral argument, the Government seems to be conflating specific deterrence with acceptance of responsibility. Tr. at 7:15-25. And, as just discussed, the Court finds overwhelming evidence that Rodriguez is unlikely to reoffend.

As to whether those comments indicate a lack of remorse, the Court agrees with Judge Liman, who recently observed in a similar context that defendants are entitled to, and should not

18

be penalized for, the vigorous advocacy of their attorneys.

United States v. Gluzman, No. 96-cr-323 (LJL), 2020 WL 4233049,

at *19 n.8 (S.D.N.Y. Jul. 23, 2020). Moreover, the Court finds

substantial evidence of Rodriguez's remorse in the letters from

those who know him best. A prison guard reported that Rodriguez

has "learned a lot of lessons since he's been in jail, and he

wishes he could go back and change things he did wrong in the

past." Letter from R. Rhoades dated Apr. 4, 2012, Dkt. No. 372-

4. In addition, Rodriguez's sister wrote to the Court to make

clear that she "know[s] that Diego regrets his crime." Letter

from Elizabeth Calzada to the Court dated Jul. 20, 2020, Dkt.

No. 372-7.

Turning to the other factors, however, Section 3553(a) also

requires that a sentence "reflect the seriousness of the

offense," "promote respect for the law," and "provide just

punishment for the offense." These factors counsel against a

sentence reduction – and effectively foreclose a reduction to

time served. There can be no question that Rodriguez's offenses,

especially his participation in the murder of a confidential

police informant, were heinous.[10] It was, as the Government

---

[10]    It is for this reason that while, as Rodriguez stresses,
his life sentence was formally required by the then-mandatory
Sentencing Guidelines, see Def. Mem. at 19, the Court at the
time found that a life sentence would have been appropriate
separate and apart from any Guideline mandate, see Quinones, 511
F.3d at 318-19.

points out, "squarely at odds with any modicum of respect for
the law and human life." Gov. Mem. at 5.

The defense suggests that a 20-year sentence would reflect
"precisely the median sentence for murder imposed in federal
court." Def. Reply at 2. But that is exactly the problem:
Rodriguez's was not the "average" murder. It was an act of
torture and violence designed to send a dangerous message that
cooperation with law enforcement would be brutally punished. For
such a crime, the Court finds that a 20-year sentence – that is,
a reduction to time served - would not constitute just
punishment, reflect the seriousness of the offense, or promote
respect for the rule of law.

But that does not end the Court's analysis. For the reasons
discussed above, Section 3582(c)(1)(A) does not demand that this
Court choose between immediate release and wholesale denial.
Instead, it allows for any sentence reduction up to and
including time served. Exercising such authority, the Court
finds that a sentence of 30 years' imprisonment, to be followed
by a lifetime of supervised release, would constitute just
punishment, reflect the seriousness of the offense, and promote
respect for the rule of law. Indeed, a 30-year sentence – that
is, a sentence 50 percent greater than the average federal
murder sentence – reflects the fact that the defendant's crimes
were hardly ordinary and deserve substantial punishment.

In short, the Court finds that a 30-year sentence is "sufficient, but not greater than necessary" to comply with the purposes of the federal sentencing factors.

### ii. What Sentence is Warranted by the Extraordinary and Compelling Reasons?

Having found that a sentence reduction to 30 years' imprisonment, to be followed by a lifetime of supervised release, would be appropriate in light of the Section 3553(a) factors, the Court must finally consider whether such a reduction is warranted by the above-described extraordinary and compelling reasons.

The Government suggests that it is not. That is, even if a sentence reduction were appropriate in light of the Section 3553(a) factors, the Government argues, a sentence reduction to a term of years is not warranted by the extraordinary and compelling reasons presented in this case. Gov. Supp. at 3. Specifically, the Government contends that, once the pandemic subsides, "any extraordinary and compelling reasons for compassionate release would subside, too." Gov. Sup. At 3. However, that argument is predicated on the Government's assumption that the only extraordinary and compelling reason for a sentence reduction is Rodriguez's "susceptibility to contract and suffer from COVID-19." Id. As explained above, if the immediate threat of contracting COVID-19 were the sole reason

warranting a sentence reduction here, the Government might be
correct that a reduction to a term of 30 years would not be
commensurate with that reason.[11]

But the Government ignores the other two factors that
undergird the Court's finding of extraordinary and compelling
reasons: (1) the fact that, given both his underlying health
conditions and the harsh prison conditions imposed to avoid
contracting COVID-19, the pandemic has rendered Rodriguez's
sentence far harsher and more punitive than the Court had
anticipated at sentencing; and (2) the fact that Rodriguez has
been totally rehabilitated, if not transformed, over the course
of his incarceration. Those reasons will be just as relevant at
the time of Rodriguez's release as they are now. Accordingly,
the Court finds that the above-described extraordinary and

---

[11]    Nevertheless, the Court notes that the Government's
argument may prove too much. In response to the coronavirus
pandemic, courts around the country, including this one, have
granted release to prisoners whose underlying health conditions
put them at heightened risk of contracting and suffering from
COVID-19. These formerly incarcerated persons are now free
(though often confined to their houses as a new condition of
supervised release), and will remain so even after the pandemic
subsides. Taken to its logical extreme, however, the
Government's theory would seem to demand that those freed on
account of the pandemic be reincarcerated once the pandemic is
over – that is, once the "grounds for [their] release have
subsided." Gov. Supp. at 3. Section 3582(c)(1)(A), of course,
requires no such thing. And that is because the statute does not
require a perfect nexus between the extraordinary and compelling
reason and the sentence reduction but only, as discussed above,
that the latter be reasonably responsive to the former.

compelling reasons warrant a reduction to a term of 30 years'
imprisonment, to be followed by a lifetime of supervised
release. Such a sentence reduction is reasonably responsive to
the identified extraordinary and compelling reasons.

III. <u>Conclusion</u>

   Rodriguez's rehabilitation, together with the unique hardship
and risk of severe illness imposed by the pandemic, constitute
extraordinary and compelling reasons justifying a reduction in
his sentence. While the horrific nature of his crime precludes
the Court from granting his immediate release, the Court
concludes that a reduction to a sentence of 30 years'
imprisonment, to be followed by a lifetime of supervised
release, is both warranted by those extraordinary and compelling
reasons and appropriate in light of the Section 3553(a) factors.
Accordingly, Rodriguez's motion for a sentence reduction of
sentence is granted in part, and his life sentence is reduced to
a term of 30 years' imprisonment, to be followed by a lifetime
of supervised release.

   The Clerk of the Court is directed to close docket entries 369
and 371.

        SO ORDERED.

Dated: New York, NY
September 3q, 2020                          JED S. RAKOFF, U.S.D.J.